UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY INC., <br><br> Plaintiff, <br><br> v. <br><br> PROSKY, INC.; and CRYSTAL A. HUANG, <br><br> Defendants. | **REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 80)** <br><br> Case No. 2:22-cv-00057 <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

In this insurance coverage dispute, State National Insurance Company Inc. moves for summary judgment against ProSky, Inc. and Crystal A. Huang on its second, third, and fourth claims for declaratory judgment.[1] State National seeks a declaration that it is not obligated, under the insurance policy at issue, to defend or indemnify ProSky or Ms. Huang with respect to the lawsuit the Securities and Exchange Commission brought against them (or any other claim arising out of related acts or omissions).[2] The deadline to respond to the motion has passed, and neither ProSky (which is in default) nor Ms. Huang filed a response. Because there are no genuine disputes of material fact and State National has established it is entitled to judgment as a matter of law, the undersigned recommends the district judge grant the motion.[3]

---

[1] (Mot. for Summ. J. ("MSJ"), Doc. No. 80.)

[2] (*Id.* at 2.)

[3] This matter is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. Nos. 81 & 82.)

1

## PROCEDURAL HISTORY

State National brought this action for declaratory judgment against ProSky and Ms. Huang in 2022, seeking a declaration that it has no duty to indemnify or defend them under an insurance policy issued to ProSky.[4] Ms. Huang filed an answer.[5] ProSky failed to appear, and its default was entered in August 2023.[6] Ms. Huang's counsel withdrew in October 2024.[7] And Ms. Huang has failed to appear pro se or through new counsel since that time.

When State National moved for summary judgment, it provided a certificate of service.[8] In this certificate, State National indicated it mailed its motion to two addresses: an address provided by Ms. Huang's former counsel (in their motions to withdraw) as her last known address, and an updated address for Ms. Huang which the court obtained from U.S. Postal Service after mail to the other address was returned as undeliverable.[9] No response to the motion has been filed.

---

[4] (*See* Compl. for Declaratory J. ("Compl."), Doc. No. 2; Am. Compl. for Declaratory J. ("Am. Compl."), Doc. No. 67.) State National was ordered to file an amended complaint in March 2024 to properly allege the parties' citizenship. (*See* Doc. No. 66.) Other than allegations of citizenship, the amended complaint is identical to the original. (*See* Compl. ¶¶ 7–10, Doc. No. 2; Am. Compl. ¶¶ 7–10, Doc. No. 67.)

[5] (Answer to Compl. for Declaratory J. ("Answer"), Doc. No. 29.)

[6] (Clerk's Entry of Default Certificate, Doc. No. 52.)

[7] (*See* Order Granting Mots. for Withdrawal of Counsel, Doc. No. 78.)

[8] (MSJ 22, Doc. No. 80.)

[9] (*See id.*; Mots. for Withdrawal of Counsel, Doc. Nos. 71 & 77; docket text entry (Oct. 18, 2024).)

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[11]  In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[12] Under the District of Utah's local rules, if a party fails to timely respond to a motion for summary judgment, "the court may grant the motion without further notice if the moving party has established that it is entitled to judgment as a matter of law."[13]

## UNDISPUTED MATERIAL FACTS

The following facts are set forth in State National's motion for summary judgment.  Because no response was filed, these facts are undisputed.

*The SEC Action*

On September 10, 2021, the SEC filed a complaint against ProSky and Ms. Huang in the action styled *Securities and Exchange Commission v. ProSky, Inc. et al.* in the United States District Court for the Southern District of New York (case number

---

[10] Fed. R. Civ. P. 56(a).

[11] Fed. R. Civ. P. 56(c)(1)(A).

[12] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[13] DUCivR 56-1(f).

1:21-cv-07568).[14]  In the complaint, the SEC alleged that between "February 2015 and February 2020," ProSky and Ms. Huang "made materially false and misleading representations about [ProSky's] financial condition and its customer base to induce investments from at least sixteen prospective and pre-existing investors and then misappropriated some investor money."[15]  The SEC asserted that Ms. Huang and ProSky provided investors with "falsified bank statements and balance sheets that overstated ProSky's cash reserves and revenues by millions of dollars," as well as "falsified customer lists that contained companies which were not actual ProSky customers and which were used to support inflated revenue figures."[16]  The SEC further alleged that ProSky's actual bank records reflect limited revenue from only two customers during the relevant five-year period—"$3,100 from a customer in September 2018 and $150,000 from another customer which paid ProSky between December 2019 and March 2020."[17]  Ultimately, "[a]t least 13 investors invested a total of $5.025 million in ProSky after receiving materially false and misleading information about ProSky from [Ms.] Huang."[18]

---

[14] (Ex. 1 to MSJ, Compl. in Case No. 21-cv-7568 (S.D.N.Y. Sept. 10, 2021) ("SEC Compl."), Doc. No. 80-2.)

[15] (*Id.* ¶ 1.)

[16] (*Id.*)

[17] (*Id.* ¶ 36.)

[18] (*Id.* ¶ 15.)

According to the SEC's complaint, Ms. Huang was "the control person of ProSky and was a culpable participant in ProSky's fraudulent conduct."[19] She was "ProSky's CEO, operated ProSky without a board of directors, and was the only ProSky representative to communicate directly with customers concerning the Company's financial performance and the terms of any prospective investment."[20] The SEC alleged "[Ms.] Huang, as ProSky's CEO and control person, knew that ProSky was providing materially false and misleading financial, customer, and other information to investors and substantially assisted ProSky's violations."[21] Based on these allegations, the SEC asserted six causes of action for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rule 10b-5—and sought a permanent injunction against Ms. Huang and ProSky, disgorgement of all illicit gains, prejudgment interest, and civil penalties.[22] Ms. Huang and ProSky notified State National of the SEC's investigation in April 2021 (before the SEC filed its complaint), seeking coverage under the insurance policy with State National.[23]

---

[19] (*Id.* ¶ 49.)

[20] (*Id.*)

[21] (*Id.* ¶ 50.)

[22] (*Id.* at pp. 16–21.)

[23] (Answer ¶ 3, Doc. No. 29.)

On September 28, 2021, the judge presiding over the SEC action entered a final judgment against Ms. Huang and ProSky.[24] The defendants consented to the judgment,[25] but did not seek or obtain State National's consent before doing so.[26] The final judgment permanently enjoined Ms. Huang and ProSky from violating securities laws, enjoined Ms. Huang from trading in securities or serving as an officer or director of a publicly traded company, held the defendants jointly and severally liable for $3,196,949.82 in disgorgement and $809,799.07 in prejudgment interest, and held Ms. Huang liable for an additional $700,000 civil penalty.[27]

*The Criminal Action*

In February 2023, the United States Attorney for the District of Utah filed a felony information against Ms. Huang, asserting a violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (securities fraud).[28] The United States alleged that "[b]eginning in or around February 2015 and continuing to and around February 2020," Ms. Huang

> willfully, knowingly, and with intent to defraud, in the purchase and sale of securities, that is, investments in her company ProSky Inc., . . . did (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material fact and omit to state material facts in order to make the statements made, in light of the circumstances in which they were made[,] not misleading; and (3) engage in acts, transactions, practices, and

---

[24] (Ex. 2 to MSJ, Final J. as to Defs. ProSky, Inc. and Crystal A. Huang and Relief Def. T and C Partnership, LLC in Case No. 21-cv-7568 (S.D.N.Y. Sept. 28, 2021) ("SEC Judgment"), Doc. No. 80-3.)

[25] (*Id.* at 1.)

[26] (*See* MSJ 7, Doc. No. 80.)

[27] (Ex. 2 to MSJ, SEC Judgment, Doc. No. 80-3.)

[28] (Ex. 3 to MSJ, Felony Information in Case No. 2:23-cr-00069 (D. Utah Feb. 23, 2023), Doc. No. 80-4.)

6

courses of business which would operate and did operate as a fraud and deceit upon other persons . . . .[29]

More specifically, the United States alleged Ms. Huang fraudulently represented to investors that "her company, ProSky Inc., had millions in recurring revenue[,] when in fact, it took in very limited revenue."[30] It further alleged Ms. Huang provided "falsified ProSky Inc. balance sheets, profit and loss statements, bank account statements, and customer lists" and communicated with investors "to further her fraudulent conduct through material misrepresentations and omission regarding her company ProSky Inc."[31]

In May 2023, Ms. Huang pleaded guilty to securities fraud, and expressly admitted the following in her plea statement:

> Beginning in or around February 2015 and continuing to and around February 2020, within the District of Utah and elsewhere, I willfully and knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises and omissions of material facts. As part of my scheme and artifice to defraud, I provided materially false representations and promises to potential investors to secure money in exchange for securities offerings in my company, Pro[S]ky Inc. During the course and scope of the scheme and artifice to defraud, I obtained approximately $5.025 million from approximately 13 investors.[32]

---

[29] (*Id.* ¶¶ 2, 10.)

[30] (*Id.* ¶ 5.)

[31] (*Id.* ¶¶ 6–7.)

[32] (Ex. 5 to MSJ, Statement by Def. in Advance of Plea of Guilty and Plea Agreement in Case No. 2:23-cr-00069 (D. Utah May 30, 2023) ("Plea Statement") ¶ 11.a, Doc. No. 80-6.)

After pleading guilty, Ms. Huang submitted a sentencing affidavit, admitting she "committed fraud in [her] attempts to solicit funds from investors" and "[t]hese actions ultimately caused these investors extreme financial loss."[33] Ms. Huang further admitted: "I know that I am guilty and I did commit the crime for which I have pleaded guilty."[34] In September 2023, the judge presiding over the criminal action entered judgment against Ms. Huang, imposing an eighteen-month prison sentence followed by twenty-four months of supervised release.[35]

*The Insurance Policy*

State National issued Management Liability Insurance Policy No. HDG.MPL.20.EPDW-JUH2 (the "Policy") to ProSky, Inc. on a claims-made-and-reported basis for a policy period of September 29, 2020 to September 29, 2021.[36] But the Policy contains exclusions applicable here.

First, the Policy excludes coverage for any claim:

1. brought about or contributed to by:

    a. You gaining any personal profit, financial advantage or remuneration to which You were not legally entitled; or

    b. Your deliberately fraudulent or deliberately criminal acts;

---

[33] (Ex. 6 to MSJ, Sentencing Aff. of Crystal Huang in Case No. 2:23-cr-00069 (D. Utah Aug. 29, 2023) ("Sentencing Aff.") ¶¶ 4, 9, Doc. No. 80-7.)

[34] (*Id.* ¶ 17.)

[35] (Ex. 4 to MSJ, J. in a Criminal Case in Case No. 2:23-cr-00069 (D. Utah Sept. 5, 2023) ("Criminal Judgment"), Doc. No. 80-5.)

[36] (Ex. 7 to MSJ, Policy No. HDG.MPL.20.EPDW-JUH2 ("Policy"), Doc. No. 80-8; *see also* Ex. 8 to MSJ, Aff. of Julie Morency in Supp. of Pl.'s Mot. for Summ. J. ¶ 2, Doc. No. 80-9.)

> however, this exclusion shall not apply unless and until there is a final, non-appealable adjudication as to such conduct in the underlying proceeding.[37]

State National refers to these exclusions as the "Illegal Profit Exclusion" and "Criminal Acts Exclusion."[38] The terms "You" and "Your" mean ProSky as well as "all Insured Persons," defined to include "all past, present and future Employees and directors, officers, management committee members, management board observers, advisory committee members, members of the board of managers or natural person general partners of the Company."[39]

> Second, the Policy excludes coverage for any claim
>
> based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Act that any Senior Executive was aware of before the Prior Acts date stated in the Declarations if such person had reason to believe the Wrongful Act might result in a Claim.[40]

State National refers to this exclusion as the "Prior Acts Exclusion."[41] The term "Senior Executive" is defined as "any Chief Financial Officer, Chief Executive Officer, General Counsel, management committee member, member of the Board of Managers or general partner" of ProSky.[42] The "Prior Acts" date is September 29, 2020.[43]

---

[37] (Ex. 7 to MSJ, Policy, Common Terms and Conditions C.1, Doc. No. 80-8 at 16.)

[38] (MSJ 11, Doc. No. 80.)

[39] (Ex. 7 to MSJ, Policy, Common Terms and Conditions B.11 & Management Liability Coverage B.3, Doc. No. 80-8 at 14, 27.)

[40] (*Id.*, Common Terms and Conditions C.3, Doc. No. 80-8 at 16.)

[41] (MSJ 11, Doc. No. 80.)

[42] (Ex. 7 to MSJ, Policy, Common Terms and Conditions B.23, Doc. No. 80-8 at 15.)

[43] (*Id.*, Common Declarations E, Doc. No. 80-8 at 6.)

Third, the Policy excludes coverage for matters misrepresented in the insureds' application for insurance. The Policy states:

> If any material statements, representations, or information contained in or provided with the Application are not true and accurate, no coverage shall be provided under the Policy for:
>
> 1. any Insured Person for any Claim if such Insured Person had knowledge, as of this Policy's inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the Application . . . .
>
> 3. the Company . . . for any Claim if the person who signed the Application or any Senior Executive had knowledge, as of this Policy's inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the Application.[44]

State National refers to this exclusion as the "Application Exclusion."[45] The application, which is incorporated into and constitutes part of the Policy,[46] asked whether ProSky or Ms. Huang were aware of "any fact, circumstance, or situation that might reasonably result in a written demand or civil or criminal proceeding against your business or any proposed Insured."[47] Ms. Huang and ProSky answered "no" to that question.[48] The application also requested information regarding ProSky's financial condition.[49] In response, the defendants represented that ProSky had $3.5 million in total capital raised, zero debt, $1.6 million in total cash and equivalents, $10,000 in personal

---

[44] (*Id.*, Common Terms and Conditions L, Doc. No. 80-8 at 22–23.)

[45] (MSJ 12, Doc. No. 80.)

[46] (*See id.* at 12 n.8; Ex. 7 to MSJ, Policy, Common Terms and Conditions L, Doc. No. 80-8 at 22.)

[47] (Ex. 7 to MSJ, Policy, Appl. for Coverage VII.2, Doc. No. 80-8 at 47.)

[48] (*Id.*)

[49] (*Id.*, Appl. for Coverage I, IV, Doc. No. 80-8 at 43–44.)

property, and $500,000 in revenue for the prior twelve months.[50]  Ms. Huang completed and submitted the application on September 28, 2020.[51]

## ANALYSIS

State National moves for summary judgment on three claims: (1) the second claim for relief, seeking a declaration that the "Prior Acts Exclusion" precludes a defense and indemnity because the insureds knew of the potential for the SEC action before the issuance of the Policy; (2) the third claim for relief, seeking a declaration that the "Application Exclusion" precludes a defense and indemnity because the insureds misrepresented their knowledge of potential claims as well as ProSky's financial status; and (3) the fourth claim for relief, seeking a declaration that the "Criminal Acts Exclusion" and "Illegal Profit Exclusion" preclude any indemnity coverage.[52]  As explained below, State National has demonstrated it is entitled to judgment as a matter of law on these claims.

A party seeking a declaratory judgment must show "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[53]  An insurer's duty to defend is properly assessed after a lawsuit is filed against the insured, and its duty to indemnify

---

[50] (*Id.*)

[51] (Answer ¶ 13, Doc. No. 29.)

[52] (*See* MSJ 2–3, Doc. No. 80; Am. Compl. ¶¶ 68–84, Doc. No. 67.)

[53] *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (citation and emphasis omitted).

is properly assessed after the insured's liability is determined.[54] Here, because a final judgment has entered in the SEC action, State National's declaratory judgment claims regarding its obligation to defend and indemnify ProSky and Ms. Huang in the SEC action are justiciable.

Under Utah law,[55] the "eight corners" rule determines whether an insurer's duty to defend is triggered under an insurance policy.[56] Under this rule, the court "examines the language of the policy and compare[s] it to the allegations made in a complaint to ascertain" whether an insurer has a duty to defend.[57] However, "when policy terms define the scope of the duty to defend in reference to something other than the allegations in the complaint, a court may look beyond the text of the complaint to determine whether the duty has been triggered."[58] The duty to indemnify is narrower than the duty to defend; without a duty to defend, there can be no duty to indemnify.[59]

---

[54] *See Owners Ins. Co. v. Presidential Club Homeowners Ass'n*, No. 2:20-cv-00594, 2021 U.S. Dist. LEXIS 27049, at *7–8 (D. Utah Feb. 10, 2021) (unpublished).

[55] Because this case arises out of diversity jurisdiction, the substantive law of the forum state (Utah) applies. *See Owners Ins. Co. v. Dockstader*, 861 F. App'x 210, 213 (10th Cir. 2021) (unpublished) (citing *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)); *Houston Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.").

[56] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 18, 266 P.3d 733, 737.

[57] *Id.*

[58] *Id.* ¶ 11, 266 P.3d at 736.

[59] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1328 (10th Cir. 2019) (applying Utah law) (citing *Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 23, 27 P.3d 555, 561; *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997)).

"It is the insurance company's burden to 'demonstrate that none of the allegations of the underlying claim is potentially covered (or that a policy exclusion conclusively applies to exclude all potential for such coverage).'"[60]

Based on the undisputed facts, State National has demonstrated the exclusions at issue preclude coverage for the SEC action.

### A.  Criminal Acts and Illegal Profit Exclusions (Fourth Claim for Relief)

The Policy's criminal acts and illegal profit exclusions preclude coverage because these exclusions apply to claims brought about by any insured's "deliberately fraudulent or deliberately criminal acts" or "gaining any personal profit, financial advantage or remuneration to which [the insured was] not legally entitled."[61]  The SEC action is based on allegations that Ms. Huang and ProSky willfully and knowingly defrauded investors out of millions of dollars by making false representations and providing falsified documents regarding ProSky's business.[62]  Accordingly, the SEC action is based on the defendants' deliberately fraudulent and criminal acts, including their unlawful gain of personal profit or financial advantage.

These exclusions apply once a "final, non-appealable adjudication" establishes the excluded conduct.[63]  Ms. Huang's admissions and the judgment in the criminal action satisfy this condition.  The SEC action and the criminal action are based on the

---

[60] *Ctr. for Excellence in Higher Educ., Inc. v. RSUI Indem. Co.*, 375 F. Supp. 3d 1217, 1223–24 (D. Utah 2019) (applying Utah law) (quoting *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014)).

[61] (Ex. 7 to MSJ, Policy, Common Terms and Conditions C.1, Doc. No. 80-8 at 16.)

[62] (*See* Ex. 1 to MSJ, SEC Compl., Doc. No. 80-2.)

[63] (Ex. 7 to MSJ, Policy, Common Terms and Conditions C.1, Doc. No. 80-8 at 16.)

same underlying conduct. Both actions allege the same fraudulent scheme (making false representations and providing false documents in order to induce investors to invest in ProSky) perpetrated by the same person (Ms. Huang) against the same thirteen investors over the same time frame (February 2015 to February 2020) for the same sum ($5.025 million). In the criminal action, Ms. Huang admitted the truth of these allegations. In her plea statement, Ms. Huang admitted she "willfully and knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises and omissions of material facts."[64] And she acknowledged that, as part of this scheme, she "provided materially false representations and promises to potential investors to secure money in exchange for securities offerings in [her] company, Pro[S]ky," and "obtained approximately $5.025 million from approximately 13 investors."[65] Based on her guilty plea, the court entered a criminal judgment against her for securities fraud.[66]

In sum, Ms. Huang admitted she deliberately and fraudulently committed the acts forming the basis of the SEC action and that she and ProSky were unlawfully enriched by those acts. Ms. Huang's guilty plea and resulting judgment constitute a "final adjudication" establishing this conduct as a matter of fact. Courts have applied similar

---

[64] (Ex. 5 to MSJ, Plea Statement ¶ 11.a, Doc. No. 80-6.)

[65] (*Id.*) In her sentencing affidavit, Ms. Huang reiterated that she "committed fraud in [her] attempts to solicit funds from investors" and that she "did commit the crime for which [she] pleaded guilty." (Ex. 6 to MSJ, Sentencing Aff. ¶¶ 9, 17, Doc. No. 80-7.)

[66] (Ex. 4 to MSJ, Criminal Judgment, Doc. No. 80-5.)

exclusions based on an insured's guilty plea or criminal conviction.[67] Further, the adjudication in the criminal action is "final" and "non-appealable," where it was entered based on Ms. Huang's guilty plea and the appeal deadline has passed.[68]

In short, Ms. Huang's admissions and the judgment in the criminal action trigger the Policy's criminal acts and illegal profit exclusions, which precludes coverage for the SEC action and any other claims arising from the same circumstances.

### B. Prior Acts Exclusion (Second Claim for Relief)

The Policy's prior acts exclusion also precludes coverage. This exclusion applies to claims arising out of any "Wrongful Act that any Senior Executive was aware of before the Prior Acts date stated in the Declarations [September 29, 2020] if such person had reason to believe the Wrongful Act might result in a Claim."[69] The term "Senior Executive" is defined as "any Chief Financial Officer, Chief Executive Officer, General Counsel, management committee member, member of the Board of Managers or general partner" of ProSky.[70] Ms. Huang is a "Senior Executive" as defined by the

---

[67] See, e.g., Unencumbered Assets, Tr. v. Great Am. Ins. Co., 817 F. Supp. 2d 1014, 1033 (S.D. Ohio 2011) (finding that an insured's conviction for securities fraud and wire fraud constituted a "final adjudication" establishing fraudulent conduct for purposes of an exclusion); Herley Indus., Inc. v. Fed. Ins. Cos., Inc., No. 08-5377, 2009 U.S. Dist. LEXIS 74871, at *32–36 (E.D. Pa. Aug. 21, 2009) (unpublished) (finding that an insured's guilty plea and judgment for fraud precluded coverage for civil securities and derivative actions based on the same conduct).

[68] See United States v. Lopez-Hodgson, 333 F. App'x 347, 349 (10th Cir. 2009) (unpublished) ("A defendant is normally precluded from appealing his conviction after pleading guilty."); Fed. R. App. P. 4(b)(1).

[69] (Ex. 7 to MSJ, Policy, Common Terms and Conditions C.3, Doc. No. 80-8 at 16.)

[70] (Id., Common Terms and Conditions B.23, Doc. No. 80-8 at 15.)

Policy, where she admitted she is ProSky's founder and Chief Executive Officer.[71]  She also admitted she intentionally planned and executed the fraudulent scheme at the center of the SEC action beginning in February 2015—five years before the prior acts date.[72]

A person who commits an intentionally fraudulent or criminal act has reason to believe such an act could result in a claim.[73]  Here, Ms. Huang's admissions in the criminal action establish that she applied for and purchased the Policy after intentionally defrauding investors out of millions of dollars in a five-year-long scheme.  It necessarily follows that Ms. Huang knew, before the prior acts date, that such conduct could result in a claim.  Accordingly, the prior acts exclusion applies.

### C. Application Exclusion (Third Claim for Relief)

The application exclusion also precludes coverage for the SEC action.  This exclusion bars coverage claims to the extent "any material statements, representations,

---

[71] (Answer ¶ 13, Doc. No. 29; Ex. 6 to MSJ, Sentencing Aff. ¶ 8, Doc. No. 80-7.)

[72] (Ex. 5 to MSJ, Plea Statement ¶ 11.a, Doc. No. 80-6.)

[73] *See Cohen-Esrey Real Est. Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1304 (10th Cir. 2011) (finding an insured's knowledge that its employee had conducted a fraudulent scheme to embezzle money from its client triggered a prior knowledge exclusion under Kansas law); *James River Ins. Co. v. Inn-One Home, LLC*, 542 F. Supp. 3d 257, 266 (D. Vt. 2021) (finding a residential care facility's knowledge that its employee had been criminally prosecuted for assaulting one of the facility's patients provided a basis to anticipate a claim by the patient); *XL Specialty Ins. Co. v. Agoglia*, No. 08 Civ. 3821, 2009 U.S. Dist. LEXIS 36601, at *21 (S.D.N.Y. Mar. 2, 2009) (unpublished) (finding an insured's guilty plea and admissions in a criminal action for securities fraud arising out of a receivable scheme "establish his prior knowledge of facts and circumstances that might give rise to a claim" based on such conduct—and applying a prior knowledge exclusion to civil actions arising from the same circumstances).

or information contained in or provided with the Application are not true and accurate."[74] Ms. Huang's admissions in the criminal action establish that she and ProSky made numerous misrepresentations in the Policy application. Specifically, they represented they were unaware of "any fact, circumstance, or situation that might reasonably result in a written demand or civil or criminal proceeding against [their] business or any proposed Insured."[75] This is directly contradicted by Ms. Huang's admissions that she intentionally perpetrated a scheme to defraud investors out of more than $5 million in the five years before applying for the Policy. A person who engages in such conduct is necessarily aware of circumstances that might result in a claim.

The undisputed facts demonstrate that in addition to misrepresenting their knowledge of these circumstances, the defendants also misrepresented ProSky's financial condition. In the application, the defendants represented that ProSky had $3.5 million in total capital raised, zero debt, $1.6 million in total cash and equivalents, $10,000 in personal property, and $500,000 in revenue for the prior twelve months.[76] However, in the criminal action, Ms. Huang admitted she fraudulently represented that ProSky "had millions in recurring revenue when, in fact, it took in very limited revenue."[77] In other words, just as Ms. Huang misrepresented ProSky's financial condition to potential investors, she mispresented it in the application.

---

[74] (Ex. 7 to MSJ, Policy, Common Terms and Conditions L, Doc. No. 80-8 at 22.)

[75] (*Id.*, Appl. for Coverage VII.2, Doc. No. 80-8 at 47.)

[76] (*Id.*, Appl. for Coverage I, IV, Doc. No. 80-8 at 43–44.)

[77] (Ex. 5 to MSJ, Plea Statement ¶ 11.b, Doc. No. 80-6.)

In light of these misrepresentations, and Ms. Huang's admitted knowledge of them, the Policy exclusion precludes coverage. Specifically, Ms. Huang is unentitled to coverage because the exclusion precludes coverage for "any Insured Person for any Claim if such Insured Person had knowledge, as of this Policy's inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the Application."[78] And ProSky is unentitled to coverage because the exclusion precludes coverage for "the Company . . . for any Claim if the person who signed the Application or any Senior Executive had knowledge, as of this Policy's inception, of any such material statements, representations, or information not truthfully and accurately disclosed in or with the Application."[79] Where Ms. Huang was both the person who signed the application and a "Senior Executive,"[80] this exclusion bars coverage for the SEC action and any claims arising from the same circumstances.

## RECOMMENDATION

Because there are no genuine disputes of material fact and State National has established it is entitled to judgment as a matter of law on its second, third, and fourth claims for declaratory judgment, the undersigned recommends the district judge grant State National's motion for summary judgment[81] and enter a declaratory judgment stating that State National has no obligation under the Policy to defend or indemnify

---

[78] (Ex. 7 to MSJ, Policy, Common Terms and Conditions L.1, Doc. No. 80-8 at 22.)

[79] (*Id.*, Common Terms and Conditions L.3, Doc. No. 80-8 at 22–23.)

[80] (*Id.*, Policy, Appl. for Coverage, Doc. No. 80-8 at 41; Ex. 6 to MSJ, Sentencing Aff. ¶ 8, Doc. No. 80-7; Answer ¶ 13, Doc. No. 29.)

[81] (Doc. No. 80.)

Crystal Huang or ProSky, Inc. with respect to the lawsuit brought against them by the Securities and Exchange Commission, including the final judgment, or any other claim arising out of the same or related acts or omissions alleged in that lawsuit.

The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[82]

DATED this 4th day of March, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[82] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).